UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MITCHELL BAROCIO, an individual, and LAURA BAROCIO, an individual,<br><br>   Plaintiffs,<br><br>   vs.<br><br>BANK OF AMERICA, N.A.; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA12 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA12; and Does 1 - 10, inclusive,<br><br>   Defendants. | Case No:  C 11-5636 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Dkt. 20, 34 |

Plaintiffs Mitchell and Laura Barocio bring the instant action against Bank of America ("BOA") and The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of the CWALT Inc. Alternative Trust 2006-OA12 Mortgage Pass-Through Certificates, Series 2006-OA12 ("BONY"), alleging that they are wrongfully attempting to collect on a $520,000 Promissory Note ("Note") secured by a Deed of Trust on their property.  The First Amended Complaint ("FAC"), the operative pleading before the Court, alleges federal claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, along with various state law causes of action.

The parties are presently before the Court on Defendants' Motion to Dismiss Plaintiffs' FAC, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 20.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **BACKGROUND**

   A. **FACTUAL SUMMARY**

On June 26, 2006, Plaintiffs executed a Note in the amount of $520,000 secured by a Deed of Trust on their property at 10 Barocio Court, Pleasant Hill, California ("the Property").  FAC ¶ 15 & Ex. A.[1]  The Deed of Trust lists American Mortgage Express Corporation ("AMEC") as the lender, First American Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS"), as the beneficiary.  Id. Ex. A.

Plaintiffs allege, on information and belief and on a date not specified in the pleadings, that AMEC subsequently sold its loan to an unknown entity or entities to "securitize" the loan through the CWALT Inc. Alternative Loan Trust 2006-OA12 Mortgage Pass-through Certificates, Series 2006 OA12 ("CWALT Trust").  Id. ¶ 17.  The CWALT Trust allegedly is governed by a document known as the Pooling and Services Agreement ("PSA").  Id.  Plaintiffs claim that their Note was not securitized in accordance with the PSA and New York law, and therefore, the CWALT Trust never gained any interest in the Note.  Id. ¶¶ 19, 25.

At some point, Plaintiffs fell behind on the mortgage payments, resulting in the commencement of the foreclosure process.  Id. ¶ 39.  On August 4, 2011, AMEC executed a Substitution of Trustee naming ReconTrust Company N.A. ("ReconTrust") as substitute trustee in place of First American Title.  FAC. Ex. F.  The Substitution was signed by "T. Sevillano" as "Asst. Secretary" for AMEC.  Id.

---

[1] It does not appear that the Property was Plaintiffs' primary residence.  See Defs.' Req. for Jud. Notice, Ex. C, Dkt. 20-2.

The next day, August 5, 2011, AMEC executed a Corporation Assignment of Deed of Trust ("Assignment") granting "all beneficial interest" under the Deed of Trust to BONY. Id. Ex. H.[2] The same day, ReconTrust, as the agent for the beneficiary, executed a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default"). Id. Ex. I. Both the Assignment and Notice of Default were recorded on August 8, 2011. Id. Exs. H, I. Plaintiffs do not dispute "that they owe money under their Mortgage obligation," but claim that some entity other than Defendants is entitled to the loan proceeds. Id. ¶ 39.

On November 10, 2011, ReconTrust recorded a Notice of Trustee's Sale, listing a sale date of December 1, 2011. Defs.' Req. for Jud. Notice ("RJN") Ex. D. Plaintiffs claim that T. Sevillano was actually employed by ReconTrust as opposed to AMEC, and that BONY and/or BOA instructed T. Sevillano to sign her name on the Substitution and Assignment, or instructed another agent to forge her signature so that it would appear that ReconTrust had the legal right to proceed with the foreclosure of the Property. FAC ¶¶ 32-33.

On or about November 17, 2011, Plaintiffs, through legal counsel, sent a letter to BOA, which they characterized as a "'qualified written request" under RESPA. Plaintiffs indicated that they were sending said letter "in order or verify and validate their debt" and to ascertain "who actually owned their Note." FAC ¶ 35 & Ex. J. To that end, Plaintiffs requested eleven categories of "information." Id. Ex. J. Plaintiffs allege that under the Dodd-Frank Act, BOA was required to have responded to their letter within five days but that it failed to do so. Id. ¶¶ 82-84.

**B.   PROCEDURAL HISTORY**

Plaintiffs filed their original complaint in this Court on November 21, 2011. Dkt. 1. On February 2, 2012, Plaintiffs filed a FAC against BOA and BONY alleging eight causes of action for: (1) declaratory relief; (2) quasi contract; (3) violation of the FDCPA;

---

[2] As noted, Plaintiffs have not specified the date that AMEC sold their loan to the CWALT Trust, and it is unclear whether the Assignment was made in connection with the securitization of Plaintiffs' loan.

(4) violation of RESPA; (5) violation of California Business and Professions Code § 17200, et seq.; (6) an accounting; (7) breach of contract; and (8) breach of the implied covenant of good faith and fair dealing.  As defendants, the FAC names BONY as the purported beneficiary of the Note and BOA as the loan servicer.  FAC at 3.  The FAC alleges the Court has subject matter jurisdiction based on federal question and diversity jurisdiction, 28 U.S.C. §§ 1331, 1332.  FAC ¶¶ 3, 5.

Defendants have now filed a Rule 12(b)(6) motion to dismiss all claims alleged in the FAC, along with a motion to appear on the motion by telephone.  Dkt. 20, 34.  Plaintiffs and Defendants filed an opposition and reply brief, respectively.  Dkt. 32, 33.  The matter has been fully briefed and is ripe for adjudication.

## II. LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  The pleadings must allege "enough facts to state a claim to relief that is plausible on its face."  Bell v. Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile.  Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

## III. DISCUSSION

### A. DECLARATORY RELIEF

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, allows the district court to "declare the rights and other legal relations of any interested party seeking such a

declaration . . . ." 28 U.S.C. § 2201(a). However, such relief is limited by the express terms of the statute to cases "of actual controversy." Id. As a result, a finding that a controversy actually exists is an essential prerequisite to any claims under the DJA. Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005). If the Court determines that an actual controversy exists, it must then decide "whether to exercise its discretion to take jurisdiction over the declaratory judgment action." Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2004).

Plaintiffs allege that there is an actual controversy concerning whether Defendants have any interest in the Note, Deed of Trust or the Property. FAC ¶ 53. They allege that Defendants never assumed any interest in the Property because the person executing the Substitution and Assignment on behalf of AMEC, i.e., "T. Sevillano," allegedly worked for ReconTrust and not AMEC. FAC ¶¶ 32, 49-50. As support, Plaintiffs point to a print-out of a profile from a professional networking site, LinkedIn, for "Tina Sevillano," which lists ReconTrust as her employer. Id. ¶¶ 31-33 and Ex. G. No facts are alleged establishing that the LinkedIn profile for Tina Sevillano is for the same "T. Sevillano" who executed the Substitution and Assignment. That aside, the LinkedIn profile does not state *when* Tina Sevillano began working at ReconTrust, nor does it identify her employer *at the time* she executed the documents in dispute. Perhaps more fundamentally, the mere possibility that T. Sevillano worked for ReconTrust does not demonstrate or create a reasonable inference that she was not authorized to sign the Substitution or Assignment on behalf of AMEC. See Chua v. IB Property Holdings, LLC, No. CV 11-05894 DDP (SPx), 2011 WL 3322884, at *2 (N.D. Cal. Aug. 1, 2011) (fact that signor on assignment of deed of trust and substitution of trustee was identified as being employed by two different entities did not establish invalidity of those documents). Plaintiffs' assertions that T. Sevillano is the same "Tina Sevillano" on the LinkedIn site, was not an authorized agent of AMEC, and that the Substitution and Assignment which she signed are invalid appear to be nothing more than rank speculation.

Plaintiffs' ancillary assertion that Defendants never obtained a valid interest in the Note and Deed of Trust due to the allegedly flawed securitization of the mortgage fails as well.  In particular, Plaintiffs aver that Defendants never acquired an interest in the Note sufficient to support their ability to foreclose because the process by which the Deed of Trust and Note were transferred violated the terms of the PSA, which governs the CWALT Trust.  FAC ¶ 19.  The flaw in this claim is that Plaintiffs lack standing to allege a breach of the PSA because they are neither a direct party to nor a third-party beneficiary of that agreement.  See Bernardi v. JPMorgan Chase Bank, N.A., No. 11-4212 EJD, 2012 WL 2343679, at *2 (N.D. Cal., June 20, 2012) (citing numerous cases to support dismissal of declaratory relief claim based on allegation that mortgage was improperly securitized under the PSA).

In sum, the Court finds that Plaintiffs have failed to allege facts demonstrating the existence of an actual controversy.  Accordingly, the Court dismisses Plaintiffs' first claim for declaratory relief with leave to amend.

### B. QUASI CONTRACT

Plaintiffs' claim for "quasi contract" is, in actuality, a claim for unjust enrichment.  FAC ¶¶ 57-62.  This Court has previously concluded that there is no independent claim for unjust enrichment.  Newsom v. Countrywide Home Loans, Inc., 714 F. Supp. 2d 1000, 1009-1010 (N.D. Cal. 2010).  In any event, unjust enrichment is synonymous with restitution, id., which is an available remedy under the UCL, Pfizer Inc. v. Super. Ct., 182 Cal. App. 4th 622, 631 (2010); Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 694 (2006).  As such, Plaintiffs' claim for unjust enrichment—to the extent such a claim exists—is superfluous.  See  In re Apple and AT & T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims.") (citing cases).  The Court therefore GRANTS Defendants' motion to dismiss Plaintiffs' second claim for quasi contract without leave to amend.

### C.     FDCPA

Plaintiffs' third cause of action alleges that Defendants' efforts to collect on the mortgage pursuant to the Assignment violate the FDCPA.  FAC ¶¶ 63-77.  Congress enacted the FDCPA "to eliminate abusive *debt collection practices* by *debt collectors*, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692 (emphasis added).  This and other courts have found, however, that foreclosing on a property pursuant to a deed of trust is not a debt collection practice within the meaning of the FDCPA.  Aniel v. EMC Mortg. Corp., No. C 10-5170 SBA, 2011 WL 835879 at *4-5 (N.D. Cal., Mar. 4, 2011) (citing cases) (Armstrong, J.); Medina v. EMC Mortg. Corp., No. C 09-4830 CW, 2010 WL 2573006, at *3 (N.D. Cal., June 24, 2010) ("foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA.") (internal quotations omitted).

Here, Plaintiffs deny that they are challenging Defendants' efforts to foreclose on their Property, and instead, contend that they merely are taking exception to their attempts to "collect a debt by demanding payments, attempting to collect payments and threatening to take action if payments were not made."  Pls.' Opp'n at 10.  Plaintiffs' assertion that their claim is unrelated to the impending foreclosure of their Property is unavailing. According to Plaintiffs, after the original lender assigned its rights under the promissory note and deed of trust, Defendants attempted to collect payments from Plaintiffs—and thereafter, recorded a Notice of Default against the Property to begin the foreclosure process after Plaintiffs fell behind on their payments.  Id. ¶¶ 35-39 and Ex. I.  Plaintiffs allege that the assignment of the mortgage to BONY was fraudulent, and seek to have the Notice of Default and other actions by Defendants declared void.  Id. ¶ 45.  Although Plaintiffs studiously avoid expressly demanding the cessation of the foreclosure process, the relief sought by Plaintiff is, for all intents and purposes, to prevent Defendants from foreclosing on the Property.

Even if the conduct forming the basis of Plaintiffs' claims is within the purview of the FDCPA, Defendants are not "debt collectors" within the meaning of the statute. See 15 U.S.C. §§ 1692a, 1692e. Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (citation omitted); accord De Dios v. Int'l Realty & Invs., 641 F.3d 1071, 1075 n.3 (9th Cir. 2011).

Relying on the legislative history cited above, Plaintiffs argue Defendants were acting as debt collectors, as opposed to creditors, ostensibly because the Assignment was not executed before the Notice of Default. Pls.' Opp'n at 11. However, even if a creditor is assigned a debt that is already in default, in order for the FDCPA to apply, a plaintiff must also allege that the debt was acquired solely for facilitating collection. Schlegel v. Wells Fargo Bank, 799 F. Supp. 2d 1100, 1104 (N.D. Cal. 2011) (finding that assignee of mortgagor was a creditor, not a debt collector, where plaintiffs failed to allege that "[d]efendant acquired [the] defaulted debt 'solely for the purpose of facilitating the collection of debt for another'") (quoting in part 15 U.S.C. § 1692a(4)). In neither the FAC nor their opposition to Defendants' motion to dismiss do Plaintiffs allege that Defendants acquired Plaintiffs' debt solely to facilitate collection *for another*. To the contrary, the FAC alleges that Defendants, and BONY in particular, were taking action on the debt for their own accord. Accordingly, the Court finds that based on the allegations presented, Defendants were not acting as debt collectors with respect to the conduct that forms the basis of this action. Id. The Court therefore GRANTS Defendants' motion to dismiss Plaintiffs' third claim under the FDCPA which is dismissed without leave to amend.

### D. RESPA

Plaintiffs' fourth cause of action alleges that BOA violated RESPA by failing to timely respond to their letter of November 17, 2011. FAC ¶¶ 78-88. In that letter, Plaintiffs' then counsel sent BOA a letter styled as a "Qualified Written Request" under RESPA in which they requested the following "information":

1. A true and present copy of the promissory note and deed of trust;
2. A complete life of the loan transactional history;
2. The Transactional Code for the software platform of the Servicer;
3. The code definition in plain English;
4. The Key Loan transaction history, bankruptcy work sheet (if any), or any summary of all the accounts in XL, spreadsheet format;
5. The MERS Milestone Report and Edgar website address for Pooling and Servicing Agreement, Prospectus and Prospectus supplement;
6. The name, address, name of a contact person and telephone number of the current holder and owner of the mortgage note or promissory note;
7. Copies of all collection notes and communication files;
8. All itemized statements of the amount needed to fully reinstate the loan;
9. All communications with any non-lawyer third party provider; and
10. All Form P-309 screen shots of all system accounts (principal, interest, escrow, late charges, legal fees, property inspection fees, property preservation fees, broker price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees, trustee suspense accounts, debtor suspense accounts) associated with the loan.

FAC Ex. J, Dkt. 16-10.

RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally-related mortgage loan. 12 U.S.C. § 2605(b). A borrower may obtain such information by submitting a qualified written request or "QWR," which is statutorily defined as follows:

>(B) Qualified written request
>
>>For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
>>>(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
>>>(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B); see also 24 C.F.R. § 3500.21(e)(2).

Under section 2605(e), a loan servicer "who receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan" is required to provide the borrower with a written acknowledgment of receipt within twenty days. Id. § 2605(e)(1)(A). Within sixty days of receipt of a QWR, excluding weekends and holidays, the servicer must conduct an investigation; if the servicer determines that the account is in error, the servicer must make appropriate corrections to the borrower's account and notify the borrower of the correction in writing. Id. § 2605(e)(2)(A).

Plaintiffs allege that BOA violated RESPA by failing to "acknowledge receipt of [their] QWR within [five] days of receipt, as required by section 1463(c) of the Dodd-Frank Act." FAC ¶ 82. The Dodd-Frank Act amended RESPA to shorten the response period under § 2605(e)(1)(A) from twenty days to five days, and to shorten the time period under § 2505(e)(2) from sixty days to thirty days. See Pub.L. 111-203, Title XIV, §§ 1400(c), 1463(c), July 21, 2010. Defendants counter that these particular aspects of the Dodd-Frank Act are inapt because the subject amendments do not take effect until July 21, 2013. See Bever v. Cal-Western Reconveyance Corp., No. 1:11-CV-1584 AWI-SKO, 2012 WL 2522563, at *4 (E.D. Cal., June 28, 2012); Williams v. Wells Fargo Bank N.A., No. 11-21233-CIV, 2011 WL 4368980, at *4 (S.D. Fla., Sept. 19, 2011). Plaintiffs offer no argument to the contrary; rather, they now argue that BOA's response is untimely, even if

1  the longer twenty-day time limit were applied.  The Court, however, need not address
2  whether BOA's response was timely, since Plaintiffs' letter does not qualify as a QWR in
3  the first instance.
4      RESPA requires servicers to provide written responses to a QWR seeking
5  "information relating *to the servicing of [a] loan*."  12 U.S.C. § 2605(e)(1)(A) (emphasis
6  added).  "The term 'servicing' means receiving any scheduled periodic payments from a
7  borrower pursuant to the terms of any loan ... and making the payments of principal and
8  interest and such other payments with respect to the amounts received from the borrower as
9  may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).  Here,
10 Plaintiffs' letter purports to seek information consisting of eleven categories of
11 "information."  The first such request seeks "[a] true and present copy of the promissory
12 note and deed of trust."  FAC Ex. J at 2.  A request for loan documents, however, is not the
13 proper subject of a QWR.  See Jones v. PNC Bank, N.A., No. C 10-1077 LHK, 2010 WL
14 3325615, at *2 (N.D. Cal. Aug. 20, 2010) ("A QWR must seek information relating to the
15 servicing of the loan; a request for loan origination documents is not a QWR.").  As for the
16 remaining categories of documents, this Court found that a letter containing identical
17 requests was unrelated to the servicing of a loan.  Aniel v. Litton Loan Serv., LP, No. C 10-
18 0951 SBA, 2011 WL 635258, at *2 (N.D. Cal., Feb. 11, 2011) (Armstrong, J.) (dismissing
19 REPSA claim; accord Junod v. Dream House Mortg. Co., No. CV 11-7035-ODW (VBKx),
20 2012 WL 94355, at *5 (C.D. Cal., Jan. 5, 2012) (same).  Accordingly, the Court GRANTS
21 Defendants' motion to dismiss Plaintiffs' fourth claim for violation of RESPA which is
22 dismissed without leave to amend.
23     **E.   UCL**
24     California's Unfair Competition Law ("UCL") makes actionable any "unlawful,
25 unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each
26 prong of the UCL is a separate and distinct theory of liability."  Birdsong v. Apple, Inc.,
27 590 F.3d 955, 959 (9th Cir. 2009).  Plaintiffs purport to state claims premised on all three
28 prongs of the UCL.  FAC ¶¶ 89-117.  In their motion, Defendants contend that Plaintiffs'

UCL claim should be dismissed for lack of standing, or alternatively, for failure to state a claim.

### 1. Standing

Defendants contend that Plaintiffs have failed to allege facts sufficient to establish standing under section 17204. Under that provision, "a private person has standing to sue [under the UCL] only if he or she 'has suffered [an] injury in fact and has lost money or property as a result of such unfair competition.'" Californians for Disability Rights v. Mervyn's, LLC, 39 Cal.4th 223, 227 (2006) (quoting Cal. Bus. & Prof. Code § 17204). A plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has: (1) expended money due to the defendant's acts of unfair competition, (2) lost money or property or (3) been denied money to which he or she has a cognizable claim. Hall v. Time Inc., 158 Cal. App. 4th 847, 854-55 (2008).

The pleadings allege that Plaintiffs have been injured in the following manner: (1) unidentified parties "may" seek to "enforce their debt obligation against them"; (2) there is a cloud over the title to their property; (3) Plaintiffs have been paying the wrong creditor and paid too much in interest; (4) they are unable to determine whether they sent their mortgage payments to the correct party; (5) their credit score has been damaged; and (6) they have incurred attorneys' fees. FAC ¶ 117. Defendants' motion fails to address these specific allegations, and the Court declines to do so sua sponte. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Therefore, the Court rejects Defendants' unsupported standing argument as a basis for dismissing Plaintiffs' UCL claim.

### 2. Unlawful

The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Where a plaintiff cannot state a claim under the "borrowed" law, he or she cannot state a UCL claim either. See Ingels v.

1 Westwood One Broad. Servs., Inc., 129 Cal.App.4th 1050, 1060 (2005) ("A defendant
2 cannot be liable under § 17200 for committing unlawful business practices without having
3 violated another law.").

4 Here, Plaintiffs predicate their unlawful business practice claim on alleged violations
5 of the FDCPA, RESPA and California Penal Code § 532f(a)(4). FAC ¶¶ 93-95. As
6 discussed, Plaintiffs have failed to state viable claims under the FDCPA and RESPA.
7 Therefore, Plaintiffs' UCL claim, to the extent it is based on violations of the FDCPA and
8 RESPA, fails to state a claim as a matter of law and said claims are dismissed without leave
9 to amend.

10 Plaintiffs' allegation that Defendants violated Penal Code § 532f(a)(4) fares no
11 better. That code section provides that: "(a) A person commits mortgage fraud if, with the
12 intent to defraud, the person does any of the following: [¶] (4) Files or causes to be filed
13 with the recorder of any county in connection with a mortgage loan transaction any
14 document the person knows to contain a deliberate misstatement, misrepresentation, or
15 omission." Cal. Pen. Code § 532f(a)(4). According to Plaintiffs, Defendants violated this
16 provision by recording an allegedly fabricated Assignment. FAC ¶ 95. As discussed
17 above, however, Plaintiffs have failed to allege facts sufficient to support such a claim.
18 Accordingly, Plaintiffs' claim that Defendants violated Penal Code § 532f(a)(4) is
19 dismissed with leave to amend.

20       **3.**     **Unfair**

21 A business practice that is not unlawful may nonetheless be actionable as an "unfair"
22 business practice. People ex rel. Harris v. Pac Anchor Transp., Inc., 195 Cal.App.4th 765,
23 774 (2011). "An unfair business practice under the UCL is one that either offends an
24 established public policy or is immoral, unethical, oppressive, unscrupulous, or
25 substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506
26 (9th Cir. 2008) (internal quotations and citations omitted); Glenn K. Jackson Inc. v. Roe,
27 273 F.3d 1192, 1203 (9th Cir. 2001).

28

The gravamen of Plaintiffs' claim that Defendants engaged in unfair business practices is that they demanded and accepted payments under their Note allegedly without any legal right to do so. FAC ¶ 97. As set forth above, however, this allegation is predicated on the speculative and factually unsupported notion that the Substitution and Assignment were invalid. Thus, Plaintiffs' claim for unfair business practices is dismissed with leave to amend.

### 4.     Fraudulent

Conduct is considered "fraudulent" under the UCL if the conduct is likely to deceive the public. Morgan v. AT & T Wireless Servs., Inc., 177 Cal.App.4th 1235, 1254 (2009). Although a UCL claim need not plead the elements of common law fraudulent deception, it must allege the existence of a duty to disclose, Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1557 (2007), as well as reliance, In re Tobacco II Cases, 46 Cal.4th 298, 328 (2009). In addition, the fraudulent conduct must be alleged with particularity under Rule 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir.2009) ("we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the … UCL."). This means that the complaint must allege "the who, what, when, where, and how" of the alleged fraudulent conduct, Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); see Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995). Where multiple defendants are involved, the plaintiff also must identify the role of each defendant in the alleged fraudulent scheme. See Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).

Here, it is unclear from the pleading what particular conduct Plaintiffs allege was fraudulent or how the public was deceived. To the extent that Plaintiffs are alleging that Defendants acted fraudulently in connection with the Substitution and Assignment, their allegations fail to pass muster under Rule 9(b). In addition, Plaintiffs have not alleged actual reliance on Defendants' alleged misrepresentations. Kwikset Corp. v. Superior

Court, 51 Cal.4th 310, 326 (2011) (noting that UCL claim sounding in fraud must allege and prove "actual reliance on the allegedly deceptive or misleading statements"). Plaintiffs' claim for fraudulent business practices under the UCL is therefore dismissed with leave to amend.

### F.     ACCOUNTING

Under California law, an accounting is generally a remedy in equity. Batt v. City & County of San Francisco, 155 Cal.App.4th 65, 82 (2007). "An accounting cause of action is equitable in nature, and may be sought where ... the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." Civic Western Corp. v. Zila Indus., Inc., 66 Cal.App.3d 1, 14 (1977) (internal quotation marks omitted). In the instant case, Plaintiffs allege that an accounting is necessary on the ground that they cannot determine the amount allegedly collected improperly from them by Defendants. FAC ¶ 120. Yet, Plaintiffs specifically allege *when* their loan was assigned to Defendants, and obviously are in a position to determine the *amount they paid* to Defendants. Since Plaintiffs have failed to allege any facts showing the need for an accounting, the Court dismisses Plaintiffs' sixth claim for an accounting with leave to amend.

### G.     BREACH OF CONTRACT

The FAC alleges that "BONY breached the Deed of Trust by improperly crediting and debiting their account." FAC ¶ 123. To state a claim for breach of contract under California law, Plaintiff must plead facts establishing the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008).

Defendants contend that the allegations supporting Plaintiffs' breach of contract claim are too conclusory, ostensibly because no facts are alleged as to when or how Plaintiffs' account was improperly debited or which specific payments were misapplied. However, Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim

is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555. The allegations of the FAC satisfy this requirement. Tellingly, Defendants cite no authority to support their claim that Plaintiffs must plead their breach of contract claim with specificity. Accordingly, the Court declines to dismiss Plaintiffs' seventh claim for breach of contract.

### H. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"[E]very contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Wolf v. Walt Disney Pictures & Television, 162 Cal.App.4th 1107, 1120 (2008) (internal quotations and citations omitted). Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is essentially identical to their claim for breach of contract, see FAC ¶¶ 133-142. As above, Defendants again contend that this claim should be dismissed for failure to allege specifically how and when Plaintiffs' account was improperly debited. Thus, for the same reasons, the Court declines to dismiss Plaintiffs' eighth claim for breach of the implied covenant of good faith and fair dealing.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss the FAC is GRANTED as to Plaintiffs' first claim for declaratory relief, second claim for quasi contract, third claim for violation of the FDCPA, fourth claim for violation of RESPA, fifth claim under the UCL, and sixth claim for an accounting; the motion is DENIED as to Plaintiffs' seventh claim for breach of contract and eighth claim for breach of the implied covenant of good faith and fair dealing. Plaintiffs shall have fourteen (14) days from the date this Order is filed to file their Second Amended Complaint, consistent with the rulings set forth above. Plaintiffs are advised that any additional factual allegations set forth in their amended complaint must be made in good faith and consistent with Federal Rule of Civil Procedure 11.

2. Defendants' motion to appear by telephone is DENIED as moot.

3. The parties shall appear for a telephonic Case Management Conference on **October 18, 2012 at 3:00 p.m.** Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement which complies with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court. Plaintiffs shall assume responsibility for filing the joint statement no less than seven (7) days prior to the conference date. Plaintiffs' counsel is to set up the conference call with all the parties on the line and call chambers at (510) 637-3559. NO PARTY SHALL CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.

5. This Order terminates Docket 20 and 34.

IT IS SO ORDERED.

Dated: September 10, 2012

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge